

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00035-CV

_____

WILLIAM PAUL BURCH, Appellant

V.

NATIONSTAR MORTGAGE HOLDINGS, INC., Appellee

On Appeal from the 236th District Court
Tarrant County, Texas
Trial Court No. 236-307178-19

Before Sudderth, C.J.; Kerr and Walker, JJ.
Memorandum Opinion by Justice Kerr

# MEMORANDUM OPINION

The trial court dismissed Appellant William Paul Burch's claims against Appellee Nationstar Mortgage Holdings, Inc. for lack of standing. Burch appealed. Because Burch's claims against Nationstar accrued before his later-filed bankruptcy case was converted to a Chapter 7 proceeding, the bankruptcy estate owned those claims, and only the Chapter 7 trustee had standing to assert them. We will thus affirm the trial court's dismissal based on Burch's lack of standing.

## I. Background

In June 2007, Burch's wife Juanita signed a promissory note and deed of trust; the deed of trust secured a lien on a home located on Waterford Drive in Grand Prairie. In 2008, the Burches filed for Chapter 11 bankruptcy, and the bankruptcy court approved a reorganization plan in December 2009. Under the plan, the Burches retained the Waterford Drive property as their homestead and were required to continue making monthly payments in accordance with the existing loan document's terms. The plan further called for the Burches to pay only principal and interest to the then mortgage holder (Aurora Loan Services) and to pay insurance and taxes directly rather than into an escrow account. The bankruptcy court closed the Burches' case in March 2010.

In 2012, Nationstar acquired Aurora Loan Services. That summer, in August—and despite the Burches' reorganization plan—Nationstar demanded that Juanita pay monthly escrow amounts and shortly thereafter threatened to foreclose.

Burch (but not Juanita) then went through bankruptcy a second time: in December 2012, he filed a Chapter 13 proceeding, which was converted to a Chapter 11 proceeding a year later. *See* 11 U.S.C. §§ 1301–1330; 11 U.S.C. §§ 1101–1195. In February 2016, the bankruptcy court signed an "Order Confirming Debtor[']s Plan of Reorganization," which provided that (1) Nationstar "shall retain its lien on the property"; (2) Burch would retain the property as his homestead; and (3) Burch would cure the arrears on the property and resume making tax escrow payments to Nationstar. In January 2018, the bankruptcy court converted the case to a Chapter 7. *See* 11 U.S.C. §§ 701–784. Burch did not list in his required Chapter 7 asset schedule, which he filed in June 2018, any of the claims he has asserted against Nationstar in this litigation. He received a bankruptcy discharge in June 2018.

Some ten months later, in April 2019, Burch[1] sued Nationstar seeking to quiet title to the property and asserting claims alleging an invalid (and fraudulent) lien on the Waterford Drive property, statutory fraud, breach of contract, and negligence. *See* Tex. Civ. Prac. & Rem. Code Ann. § 12.003; Tex. Bus. & Com. Code Ann. § 27.01; Tex. Prop. Code Ann. § 53.160. Burch sought "actual damages caused by the violation [of the fraudulent-lien statute] of $2,081,216," $750,000 in "compensatory damages," and $1,500,000 in punitive damages.[2]

---

[1]Juanita is not a party to this case.

[2]In July 2020, after Burch had filed this lawsuit, the bankruptcy court designated him a vexatious litigant. Its order "notes that it warned the Debtor over a

3

Nationstar moved to dismiss Burch's claims for lack of subject-matter jurisdiction, arguing that because any such claims had accrued before Burch's bankruptcy case converted to a Chapter 7 case in January 2018, the Chapter 7 bankruptcy estate owned all his claims and thus the trustee—not Burch—had exclusive standing to assert them. Alternatively, Nationstar argued that Burch did not have standing to assert claims based on the note and deed of trust because only his wife had signed them. Nationstar also moved for traditional summary judgment,

year ago that he needed to stop his abusive practice of filing more lawsuits premised in whole or in part on baseless allegations, including that various lenders' liens were somehow invalidated in the Debtor's 2008 Bankruptcy Case or 2012 Bankruptcy Case." The bankruptcy court's order included excerpts from that earlier hearing, among them its comment that "[a]ll of these issues have been litigated, time and time again, and you've lost in your underlying bankruptcy case, in now three different adversary proceedings, and when you lose, you continue to go back and file new lawsuits in state court, which frankly, is a bit offensive." The vexatious-litigant order sanctioned Burch "by restricting his ability to file future lawsuits, motions, pleadings, or other requests for affirmative relief in any federal trial court, or Texas state or local trial court, against any party involving personal or real property that was included in the Debtor's 2008 Bankruptcy Case or 2012 Bankruptcy Case (the '*Restricted Subject Matter*') without first securing this Court's prior written authorization to do so." After the bankruptcy court entered that order in July 2020, Burch and Juanita "began filing lawsuits in her name only," prompting an expanded vexatious-litigant order that encompassed both of them. *Burch v. Freedom Mortg. Corp.*, No. 3:20-CV-3086-M-BN, 2021 WL 2446962, at *2 (N.D. Tex. May 27, 2021), *report and recommendation adopted*, No. 3:20-CV-3086-M-BN, 2021 WL 2435125 (N.D. Tex. June 15, 2021), *appeal dismissed*, No. 21-10654, 2021 WL 5822941 (5th Cir. Nov. 16, 2021); *see also In re Burch*, No. 20-11171, 2022 WL 212836, at *1 (5th Cir. Jan. 24, 2022) (unpublished) (admonishing and sanctioning Burch for another in a line of frivolous proceedings and stating, "Burch is again warned that additional frivolous or abusive filings in this court, the district court, or the bankruptcy court will result in the imposition of further sanctions. Burch is once again admonished to review any pending appeals . . . and to withdraw any appeals that are frivolous").

4

arguing res judicata and Burch's lack of capacity because he was not a party to the loan.

In November 2020, the trial court granted Nationstar's motion to dismiss and ordered that "Plaintiff's claims are dismissed for lack of subject[-]matter jurisdiction based on Plaintiff's lack of standing." The trial court simultaneously granted Nationstar's summary-judgment motion "in the alternative," holding that "Plaintiff's claims are barred by *res judicata* and further alternatively, Plaintiff's claims are barred by Plaintiff's lack of legal capacity to assert them." Thus, the final order had three separate foundations.

Burch timely appealed.[3]

## II. Applicable Law

## A. Standing

"Standing is a constitutional prerequisite to suit," and "[a] court has no jurisdiction over a claim made by a plaintiff who lacks standing to assert it." *Heckman v. Williamson Cnty.*, 369 S.W.3d 137, 150 (Tex. 2012). Because standing is a component of subject-matter jurisdiction, its existence is a legal question that we review de novo. *See Farmers Tex. Cnty. Mut. Ins. Co. v. Beasley*, 598 S.W.3d 237, 240 (Tex. 2020). In

---

[3]Burch, appearing pro se in the trial court and in this appeal, has raised three issues that we construe as challenging the trial court's three alternative bases for disposing of Burch's claims against Nationstar.

5

evaluating standing, we construe the pleadings in the plaintiff's favor, and we consider evidence relevant to the jurisdictional inquiry. *See id.*

A standing inquiry "focuses on the question of who may bring an action." *Vernco Constr., Inc. v. Nelson*, 460 S.W.3d 145, 149 (Tex. 2015) (quoting *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 442 (Tex. 1998)). Generally, unless standing is conferred by statute, a plaintiff must show that it "possesses an interest in a conflict distinct from that of the general public, such that the defendant's actions have caused the plaintiff some particular injury." *Williams v. Lara*, 52 S.W.3d 171, 178 (Tex. 2001). To have standing, a plaintiff must be personally aggrieved. *Nootsie, Ltd. v. Williamson Cnty. Appraisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). Standing requires "a real controversy between the parties" that "will be actually determined by the judicial declaration sought," *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005) (quoting *Nootsie*, 925 S.W.2d at 662), and "focuses on whether a party has a sufficient relationship with the lawsuit so as to have a 'justiciable interest' in its outcome," *id.* at 848.

### B. Property of bankruptcy estate

Filing a petition for bankruptcy creates a bankruptcy estate. *See* 11 U.S.C. § 541(a); *La. World Exposition v. Fed. Ins. Co.*, 858 F.2d 233, 245 (5th Cir. 1988). "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" become part of that estate, including any legal claims that belonged to the debtor before the petition was filed. 11 U.S.C. § 541(a)(1); *see Kahn v. Helvetia Asset*

6

*Recovery, Inc.*, 475 S.W.3d 389, 393 (Tex. App.—San Antonio 2015, pet. denied); *Antonov v. Walters*, 168 S.W.3d 901, 904 (Tex. App.—Fort Worth 2005, pet. denied); *see also State Farm Life Ins. Co. v. Swift (In re Swift)*, 129 F.3d 792, 795 (5th Cir. 1997). The bankruptcy trustee is "the representative of the estate" with the "capacity to sue and be sued," 11 U.S.C. § 323, and once a claim belongs to the estate, the trustee has exclusive standing to assert the claim, *Douglas v. Delp*, 987 S.W.2d 879, 882 (Tex. 1999) (citing *Schertz–Cibolo–Universal City ISD v. Wright (In re Educators Grp. Health Tr.)*, 25 F.3d 1281, 1284 (5th Cir. 1994)); *Antonov*, 168 S.W.3d at 904–05.

A debtor may gain control over a pre-petition claim in two circumstances: (1) by listing the legal claim as an item of personal property and by designating, without objection, an available exemption for the claim, *see generally McLain v. Newhouse (In re McLain)*, 516 F.3d 301, 315 (5th Cir. 2008) (collecting cases discussing debtor's obligation to comply with statutory disclosures in order to validly exempt certain property from bankruptcy estate); or (2) by listing a legal claim that the trustee does not administer before the bankruptcy case is closed, in which case the claim can be "abandoned" and revert to the debtor, *see generally id.* (discussing debtor's "affirmative duty" under bankruptcy code to schedule all assets; if debtor fails to do so, "those assets continue to belong to the bankruptcy estate and do not revert to the debtor upon discharge"). *See also Shankles v. Gordon*, No. 05-16-00863-CV, 2018 WL 4100030, at *12 (Tex. App.—Dallas Aug. 27, 2018, no pet.) (mem. op.) ("Once an asset becomes a part of the estate, the debtor's rights in the asset are extinguished unless

7

the trustee abandons the asset pursuant to section 554 of the United States Bankruptcy Code." (citing 11 U.S.C. § 554)).

If a legal claim accrues or is acquired after the debtor files for bankruptcy but before a conversion to Chapter 7, that claim is likewise part of the bankruptcy estate. *Id.* at *8. "To determine whether a debtor had a property interest in the causes of action at the time the debtor filed for bankruptcy, courts must determine when the debtor's causes of action accrued under state law." *Id.* at *9. A claim accrues the "moment the injury occurred," *id.*, even if a plaintiff does not learn of the injury until later and even if resulting damages have yet to occur, *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996).

### III. Analysis

The face of Burch's petition shows that his claims against Nationstar accrued in August 2012, when Burch contacted Nationstar over its demand for escrow payments and told a Nationstar representative that it was in breach of contract.[4] Burch has not

---

[4]Burch pleaded the following facts:

13. In August 2012 Plaintiff was informed that Nationstar would no longer except [sic] the payments of $1,153.27 that Plaintiff had been making to Aurora because it was not in compliance with the loan regarding the Note Terms. Plaintiff informed NHMI that under the court order that Plaintiff was required to make princip[al] and interest payments only and that they carried their own insurance. Plaintiff referred the Customer Service Representative to the bankruptcy plan. . . .

8

responded to Nationstar's argument about when his claims accrued. Burch's later-filed bankruptcy case was converted to Chapter 7—with the attendant obligation for Burch to list all his assets, including legal claims—in January 2018. Our review of the record does not suggest any later point in time at which any of Burch's pleaded claims might have accrued.

Burch's Chapter 7 asset schedule did not include any possible legal claims against Nationstar, and Burch points us to nothing in the record showing that he had made the trustee aware of his claims. As a result, the Chapter 7 trustee could not have abandoned (and did not abandon) those claims when Burch's bankruptcy case was later closed and Burch was discharged; exclusive standing to pursue the claims against Nationstar remained with the trustee. *See Shankles*, 2018 WL 4100030, at *7 (noting that debtor–plaintiff agreed that her professional-negligence claims against her attorneys were property of the bankruptcy estate if they arose or accrued before her Chapter 11 was converted to Chapter 7); *see also Douglas*, 987 S.W.2d at 882 ("When Billy filed his bankruptcy petition, his legal[-]malpractice claims became part of the bankruptcy estate. Once the claims became part of the estate, only the bankruptcy

---

14. The Rep also informed us that we needed to send an extra payment of $4,273.04 to bring the Escrow up to date. The Rep said that NHMI was not a party to the bankruptcy and therefore did not have to comply [with] the Court Order. Plaintiff told the Rep that that was ridicul[ous]. . . . He also told the Rep that NHMI was in breach of contract.

trustee had standing to pursue them. By filing his bankruptcy petition, Billy relinquished to the trustee any standing to prosecute or dispose of the claims.").

Moreover, because standing is determined when an original petition is filed, Burch cannot somehow cure his lack of standing and thereby revive this litigation. *See McMillan v. Aycock*, No. 03-18-00278-CV, 2019 WL 1461427, at *2 (Tex. App.—Austin Apr. 3, 2019, no pet.) (mem. op.) ("[I]f the plaintiff lacks standing at the time suit is filed, the case must be dismissed, even if the plaintiff later acquires an interest sufficient to support standing."); *Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App.—Houston [14th Dist.] 1992, writ denied) ("A trial court determines its jurisdiction at the time a suit is filed. At that time, the court either has jurisdiction or it does not. Jurisdiction cannot subsequently be acquired while the suit is pending.").

Because only the Chapter 7 trustee could pursue the claims against Nationstar, the trial court properly granted Nationstar's motion to dismiss on Burch's lack of standing, and we overrule what we construe as Burch's appellate issue attacking that result. Our disposition obviates the need for us to analyze the trial court's alternative holding dismissing Burch's claims because his name was not on the Waterford Drive note or deed of trust and granting Nationstar's summary-judgment motion based on res judicata and lack of capacity.

**IV. Conclusion**

Having held that only Burch's Chapter 7 trustee had standing to pursue any claims against Nationstar, we overrule Burch's issues and affirm the trial court's order of dismissal.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Delivered:  May 12, 2022